**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES HORSH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 17-316 Erie** |
| **v.** | ) | |
| | ) | |
| **MICHAEL CLARK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge[1]**

### I.    INTRODUCTION

Plaintiff Charles Horsh, an inmate at the State Correctional Institute at Albion ("SCI-Albion"), commenced this *pro se* civil rights litigation in November 2017, alleging constitutionally inadequate medical care during the course of his confinement.  On January 3, 2018, the Court granted Plaintiff leave to proceed *in forma pauperis* and directed that his complaint be filed.  ECF No. 8.  Plaintiff subsequently filed his operative pleading, the Second Amended Complaint ("SAC," ECF No. 57), which names the following individuals as Defendants:  Michael Clark ("Clark"), Superintendent of SCI-Albion; Melinda Adams ("Adams"), Deputy Superintendent of Centralized Services; Jeri Smock ("Smock"), Chief Healthcare Administrator for SCI-Albion; Michael Edwards ("Edwards"), the prison's registered nursing staff supervisor; Michael J. Boggio ("Boggio"), the former Medical Director of SCI-Albion's Medical Department; Rekha Halligan ("Halligan"), Boggio's successor as Medical

---

[1] The case was initially referred for pretrial proceedings to the undersigned, acting in her capacity as then United States Magistrate Judge.  On September 14, 2018, the undersigned was sworn in as a United States District Judge.  Thereafter, this action was reassigned to this Court's docket.  ECF No. 70.

Director; Daniel Stroup ("Stroup") and Alexis Secara ("Secara"), both physician's assistants in the prison's Medical Department; and Cynthia Chuzie ("Chuzie"), a nurse practitioner in the Medical Department.

As set forth in the SAC and appended exhibits, Plaintiff presented to the Medical Department at SCI-Albion on numerous occasions between October 2016 and January 2018. During that timeframe he was seen for a host of symptoms and complaints, including, among other things, sinus problems, sores and rashes, syncopal episodes, and bowel-related issues. Perceiving that his medical treatment was inadequate, Plaintiff sought, unsuccessfully, to obtain relief through the institution's administrative grievance process. This lawsuit followed.

In his SAC, Plaintiff asserts numerous causes of action against the Defendants, spread across eight different counts. Plaintiffs' federal claims seek redress under 42 U.S.C. §1983 for the alleged violation of his constitutional rights. Plaintiff's state law claims assert a right of recovery for professional malpractice and/or negligence.

Presently pending before the Court are two motions to dismiss the SAC -- one filed on behalf of Clark, Adams, Smock, and Edwards (collectively, the "DOC Defendants"), ECF No. 63, and the other filed on behalf of Halligan, Stroup, Secara, and Chuzie (collectively, the "Medical Defendants"), ECF No. 61.[2] Also pending is a motion by Plaintiff requesting a declaration by this Court that a certificate of merit is unnecessary for purposes of prosecuting his state law medical malpractice claims. ECF No. 66. The motions having been adequately

---

[2] The Court notes that no attorney has as yet entered an appearance on behalf of Boggio, and service upon him has not been waived. Because he has not yet formally appeared through counsel, Boggio is not technically included in the group of "Medical Defendants" who have moved to dismiss the case. Nevertheless, their arguments in favor of dismissal have relevance vis-a-vis Plaintiffs' claims against Boggio. Moreover, as discussed herein, this Court is independently obligated to judge the sufficiency of Plaintiff's claims against Boggio under the terms of the Prison Litigation Reform Act, 28 U.S.C. §1915(e)(2).

briefed, they are now ripe for disposition. For the reasons that follow, the Defendants' motions to dismiss will be granted insofar as they relate to the Plaintiff's federal claims, Plaintiff's state law claims will be dismissed without prejudice to be pursued in state court, and Plaintiff's motion for a determination that a certificate of merit is unnecessary will be denied as moot.

## II.    STANDARD OF REVIEW

Defendants' motions are brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as they assert that the SAC fails to state a claim upon which relief can be granted. "When considering a Rule 12(b)(6) motion, we accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Wayne Land & Mineral Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted). In order to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

Because Plaintiff is proceeding *in forma pauperis*, the Court is also independently obligated under 28 U.S.C. § 1915(e) to consider the sufficiency of his complaint and to dismiss the case "at any time" if the action: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). When conducting a review under 28 U.S.C.

§1915(e)(2)(B)(ii), the court applies the same standard of review as it would apply under a traditional Rule 12(b)(6) analysis. *See Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).

In conducting its Rule 12(b)(6) analysis, the Court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Wayne Land*, 894 F.3d 509, 526–27 (3d Cir. 2018) (internal quotation marks and citations omitted) (alteration in the original). In this case, Plaintiff has appended to his pleading various inmate request forms and records related to his administrative grievance proceedings. Because these exhibits set forth contemporaneous documentation of Plaintiffs' various medical complaints and the prison administration's responses thereto, and because they are incorporated by reference into the SAC, they will be considered in assessing the viability of Plaintiff's claims.

Finally, recognizing that Plaintiff is proceeding *pro se*, the Court "has an obligation to construe the complaint liberally," *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009), and must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name," *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999). Notwithstanding this more liberal standard, "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).

## III.     DISCUSSION

### A.     Plaintiff's Federal Claims Under 42 U.S.C. §1983

The Court first considers Plaintiff's federal claims under 42 U.S.C. §1983. To state a viable claim under this statute, a plaintiff must plausibly allege that the individual who is sued acted under color of state law and, while doing so, violated one or more of the plaintiff's federal

constitutional or statutory rights. *See West v. Atkins,* 487 U.S. 42, 48 (1988). In addition, the person sued must have been personally involved in the alleged wrongdoing. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). This can be shown if the plaintiff adequately alleges either (1) the defendant's personal involvement in the alleged violation; or (2) his/her actual knowledge and acquiescence in the wrongful conduct. *Chavarriaga v. New Jersey Dep't of Corr.,* 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode,* 845 F.2d at 1207).

In this case, Plaintiff's §1983 claims allege violations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution. Although the Defendants' motions to dismiss focus on Plaintiff's Eighth Amendment claims, this Court is independently obligated, under 28 U.S.C. §1915(e)(2), to assess the sufficiency of his other federal claims as well. Additionally, the Court is required to evaluate the adequacy of Plaintiff's claims against Boggio, even though he has not yet appeared in this action and is therefore not joined in the Medical Defendants' motion to dismiss. The Court's analysis follows.

### 1. *Eighth Amendment Claims Against the Medical Defendants*

Counts III, IV, V, VII, and VIII of the SAC set forth a host of §1983 claims against the Medical Defendants based on the theory that these Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. U.S. Const. amend. VIII. To state an Eighth Amendment violation in the medical context, a plaintiff must plausibly allege "'(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need.'" *Anderson v. Bickell*, No. 17-1728, --- F. App'x ---, 2018 WL 5778241, at *2 (3d Cir. Nov. 2, 2018) (quoting *Parkell v. Danberg*, 833 F.3d 313, 337 (3d Cir. 2016)).

Allegations of deliberate indifference involve "a high threshold." *Anderson,* 2018 WL 5778241, at *2. Prison officials are "deliberately indifferent" only if they know that an inmate faces a substantial risk of serious harm and nevertheless disregard that risk. *See id.* (quoting *Parkell,* 833 F.3d at 335). Allegations of mere negligence or disagreement with medical decisions are insufficient to establish deliberate indifference. *Id.; see Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). "That is because 'prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners.'" *Anderson,* 2018 WL 5778241, at *2 (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)). Thus, "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference[.]" *Id.* (quoting *Palakovic*, 854 F.3d at 227) (alteration in the original).

In this case, Plaintiff's claims against the Medical Defendants are predicated on allegations that his providers: deliberately delayed examining him and also delayed diagnosing and treating his serious medical problem (Count III); refused to provide diagnostic testing to determine the cause of his alleged ailments (Count IV); wrongly accused Plaintiff of being a hypochondriac and/or opining that his medical issues were "psychological in nature" (Count V); and refused to follow the recommendations of an oral surgeon and radiologist, who allegedly recommended further study, medication, treatments, and/or advanced imaging (Counts VII and VIII). Viewed in the context of his entire treatment history, these allegations fail to support a plausible inference of deliberate indifference to serious medical needs.

In Count III, for example, Plaintiff faults "each of [the Medical Defendant's]" for "deliberate delays to actually examine, diagnose, and treat the Plaintiff's serious medical needs." SAC ¶63. Plaintiff does not specify in Count III which specific periods of delay he is challenging, what specific injury resulted from the delay, or what role each individual Defendant

played in that delay. In any event, however, Plaintiff's allegations of deliberate indifference are belied by his own well-pled averments and the pleading exhibits, which outline an extensive course of treatment over a 15-month period. Between October 2016 and January 2018, Plaintiff was seen or examined by medical personnel approximately two dozen times and was placed in the infirmary on at least five occasions. *See generally* SAC ¶¶ 13-55 and accompanying exhibits at ECF Nos. 57-2 through 57-23. Plaintiff was initially placed on a scabies protocol for a skin condition that Boggio later interpreted as follicular in nature and related to Plaintiff being on too many medications. SAC ¶¶14-15, 18; SAC Ex. B1-3, ECF No. 57-2. Plaintiff received an EKG and CT scan relative to unexplained syncopal episodes, and both tests came back normal. Medical providers opined that the episodes were vasovagal in nature. SAC ¶¶16-17; SAC Exs. B1-3, ECF No. 57-2; SAC Ex. C1-6, ECF No. 57-3. Plaintiff underwent a dental consult and jaw x-ray relative to complaints of dental pain and a locked jaw; he was then referred to an oral surgeon who diagnosed excessive teeth grinding and referred Plaintiff back to the prison medical department for ongoing study. SAC ¶¶33-36; SAC Ex. E1-3, ECF No. 57-6. For ongoing sinusitis, Plaintiff underwent chest and sinus x-rays and was prescribed multiple antibiotics and Claritin. SAC ¶¶ 20-22, 25; SAC Ex. C1-3, ECF No. 57-3. As the result of ongoing complains of abdominal pain and rectal drainage, Plaintiff underwent an abdominal x-ray, which showed an impacted bowel; Plaintiff was then placed in the infirmary where he was treated with laxatives and, eventually, enemas, stool softeners, and supplements. SAC ¶¶43-48. He was prescribed a cane for complaints of difficulty walking, SAC ¶55, and later had x-rays taken of his back, neck, and foot, which reportedly revealed mild degenerative disc disease, curvature of the spine, a toe deformity and (allegedly) maxillary sinus mucosal disease. SAC ¶54; SAC Ex. I1-3, ECF No. 57-19. To the extent Plaintiff experienced any delays in receiving an examination, diagnostic

test, or specific treatment, these delays might support an inference of medical negligence, but they do not, in the context of Plaintiff's overall treatment history, support a plausible inference of deliberate indifference on the part of Plaintiff's medical providers. Count III will therefore be dismissed.

In Count IV of the SAC, Plaintiff alleges that the Medical Defendants violated the Eighth Amendment rights by refusing "to provide (initial) diagnostic testing to determine the cause of [his] ailments, severe pain and suffering, and obviously failing health." SAC ¶64. In particular, Plaintiff objects to the fact that he has not been provided "anti-nuclear antibody testing" to rule out systemic lupus erythematosus as a cause of his symptoms. *Id*. ¶60; SAC Ex. P, ECF No. 57-12. Relatedly, Plaintiff contends in Counts VII and VIII that the Defendants displayed deliberate indifference to his serious medical needs by refusing to follow the recommendations of his "specialists." SAC ¶¶67-68. Here, Plaintiff seems to be referring to: (a) the oral surgeon's recommendation that he receive physical therapy, muscle relaxants, NSAIDs and "further study by medical personnel," SAC ¶35, and (b) a radiologist's recommendation that Plaintiff undergo a CT scan to ascertain the extent of his sinus disease and an MRI to determine the extent of his spinal damage, *id.* ¶54.

Under Eighth Amendment jurisprudence, "a prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (internal quotation marks and citation omitted). In particular, "'the question whether ... additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment,' and 'does not represent cruel and unusual punishment.'" *McCluskey v. Vincent*, 505 F. App'x 199, 203 (3d Cir. 2012) (quoting *Estelle*, 429 U.S. at 106) (ellipsis in the original); *see also Henry v. Warden James T. Vaughn Corr. Ctr.*,

No. 18-2885, 2019 WL 994297, at *2 (3d Cir. Mar. 1, 2019) (where the plaintiff's own averments established that he was prescribed medication for weight loss and had undergone a colonoscopy, blood laboratory studies, and a throat study, his insisted that medical staff should be doing more for him, such as arranging for specialist care or transfer to the hospital for additional testing failed to state an Eighth Amendment violation). Here, Plaintiff's insistence that the Medical Defendants should have ordered additional diagnostic testing amounts to no more than a disagreement with his providers' treatment plan. While Plaintiff's allegations might support a plausible inference of negligence, this is not enough to state an Eighth Amendment violation. *See Spruill,* 372 F.3d at 235; *see also Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015). Accordingly, Counts IV, VII and VIII of the SAC fail to state a cognizable claim under §1983 and will be dismissed.

Lastly, Plaintiff alleges in Count V of the SAC that Boggio and Halligan displayed "gratuitous cruelty" and deliberate indifference by suggesting that certain of his symptoms were "psychological in nature" and/or that Plaintiff was exhibiting hypochondria. SAC ¶65. Here again, Plaintiffs' averments reflect a disagreement with the medical judgment of his health care providers concerning the source of some of his medical symptoms. To the extent that Plaintiff claims that the relevant symptoms were objectively documented and could not have been psychosomatic, his averments establish, at most, possible medical negligence on the part of Boggio and Halligan; however, negligence or medical malpractice is not enough to support a plausible inference of deliberate indifference to serious medical needs. *See Spruill,* 372 F.d at 235; *Matthews,* 613 F. App'x at 170. Because no plausible Eighth Amendment violation is stated in Count V of the SAC, those claims will be dismissed.

## 2. *Claims Against the DOC Defendants*

### a. Official Capacity Claims

Plaintiff's claims against the DOC Defendants are set forth in Counts I, II, V, and VI of the SAC. As an initial matter, the Court agrees with the DOC Defendants that Plaintiff's damages claims against them in their official capacities are barred by the Eleventh Amendment, which immunizes states, state agencies, and state officials acting in their official capacities, from suits for monetary damages under Section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, (1989); *Kentucky v. Graham*, 473 U.S. 159, 160 (1985). Accordingly, Plaintiff's official capacity claims against the Moving Defendants will be dismissed insofar as they are predicated on a request for monetary damages.

### b. Count I Claims Against Smock and Edwards

In Count I of the SAC, Plaintiff claims that Smock and Edwards falsified and/or omitted "key information" in connection with their denials of Plaintiff's grievances – grievances that, according to Plaintiff, would have otherwise entitled him to "constitutionally required" relief. SAC ¶61. Plaintiff's claim against Smock is based, in part, upon a statement that Smock made in denying Grievance #671537, wherein Plaintiff complained about an alleged lack of care by the prison's medical staff. In denying Grievance #671537, Smock recounted Plaintiff's treatment history up to that point and stated, in relevant part, that Halligan had ordered a consult with an ear, nose, and throat doctor to address ongoing sinus issues, following a medical visit on April 23, 2017. SAC Ex. C-2, ECF No. 57-3 at 2-3. Plaintiff disputed Smock' representation that Halligan had ordered the ENT consult; to that end, he obtained a written confirmation from Halligan that, "[b]ased on [her] evaluation," she perceived "no objective clinical indication(s) and/or medical necessity for an ENT evaluation." SAC Ex. H.

Plaintiff subsequently filed a grievance (#682107) claiming that Smock had "falsified information as a means of denying [Grievance #671537]." SAC Ex. F1, ECF No. 57-14 at 1. On July 7, 2017, Edwards denied Grievance #682107, stating, in relevant part:

> You do have an active ENT consult that was ordered by Dr. Tonay. Dr. Halligan has requested more information before she is approving. You were seen today by Dr. Halligan and CHCA Smock to discuss your treatment plan. Mrs. Smock did not falsify any documentation. The consult was ordered and then denied as the physician was requesting more information. As soon as Dr. Halligan approves the ENT Consult it will be scheduled. . . .

SAC Ex. F2, ECF No. 57-14 at 2.

In his SAC, Plaintiff alleges that Smock's statement about the ENT consult was "fraudulent." SAC ¶34. Elsewhere in his pleading, Plaintiff claims that Smock and Edwards inaccurately stated in their grievance denials that Plaintiff had been "thoroughly examined," as opposed to simply being "seen" by medical staff. SAC ¶59. Plaintiff theorizes that Smock and Edwards used this "fraudulent" information out of "evil intent, retaliation, or to avoid liability." *Id.* He insists that, by their actions, Smock and Edwards violated his "First Amendment Right to Access to Administrative Remedy (Access to the courts)," his Eighth Amendment right not to be subjected to "cruel and unusual punishment," and his Fourteenth Amendment right to be "protect[ed] . . . from the risk of harm." *Id.*

(i)     Plaintiff's "Access to Courts" Claim

The First Amendment right to petition the government for redress includes a constitutional right to access the courts. *Woodford v. Ngo,* 548 U.S. 81, 122 (2006); *Tormasi v. Hayman,* 443 F. App'x 742, 745 (3d Cir. 2011). In order to state a claim based on the denial of access to the courts, a prisoner must allege that his efforts to pursue a legal claim through the court system were hindered and he suffered an actual injury thereby. *See Ross v. Clerk of Courts of Court of Common Pleas of Phila., Pa.*, 726 F. App'x 864, 865 (3d Cir.), *cert. denied*, 139 S.

Ct. 460 (2018) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). It is well recognized, however, that prisoners do not have a constitutional right to the administrative grievance process or any particular relief offered through such process. *See Jones v. N. C. Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-138 (1977) (providing that the law is well settled that there is no constitutional right to a grievance procedure); *Bakhtiari v. Spaulding*, No. 1:17-CV-00016, 2017 WL 2778524, at *14 (M.D. Pa. June 27, 2017) ("Even if the prison provides for a grievance procedure, as the BOP does, violations of those procedures do not give rise to a civil rights cause of action.").

Here, Plaintiff has failed to plead facts demonstrating that he was denied access to the courts. Instead, his First Amendment claim is based solely on an alleged denial of relief through the DOC's administrative grievance process. Because Plaintiff's averments, even if proven, do not state a plausible constitutional violation, his First Amendment claim in Count I will be dismissed.

(ii)     Plaintiff's Claims Under the Eighth and Fourteenth Amendments

Plaintiff's allegations concerning alleged Fourteenth Amendment and Eighth Amendment violations likewise fail to state a viable claim. Pursuant to the Fourteenth Amendment's "Due Process" clause, states assume a constitutional duty to protect or care for individuals in limited circumstances – such as "when the State takes a person into its custody and holds him there against his will." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs*., 489 U.S. 189, 199-200 (1989). To establish a Fourteenth Amendment violation based on a "failure to protect" theory, a plaintiff must prove that the defendant official acted with deliberate indifference to the plaintiff's health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hernandez v. Rockovich*, No. 1:16-CV-02407, 2018 WL 4699970, at *7 (M.D. Pa. Oct. 1, 2018). Thus, in the context of

this case, Plaintiff's Fourteenth Amendment "failure to protect" claim is substantially identical to – and coalesces with – his Eighth Amendment claims predicated upon alleged deliberate indifference to serious medical needs.  *See, e.g., Battle v. McGann,* Civil Action No. 17-12041, 2018 WL 5263279, at *3 (D.N.J. Oct. 23, 2018) ("To establish a claim for an Eighth Amendment violation of the right to adequate medical care or for failure to protect, a prisoner must demonstrate '(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious.'") (quoting *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999)).

Notably, Plaintiff's "failure to protect" and "deliberate indifference" claims in Count I are both predicated on the assumption that Plaintiff received constitutionally inadequate medical care which would have been successfully redressed through the administrative grievance process, had Smock and Edwards not fraudulently denied his otherwise meritorious grievances.  *See* SAC ¶61.  For the reasons discussed, however, the Court has determined that Plaintiff has failed to plead constitutionally inadequate medical care.  Even if he had, Plaintiff cannot establish the requisite personal involvement of Smock and Edwards simply by pointing to their involvement in the grievance process. *See Young v. Boggio,* No. CV 17-125, 2018 WL 6840121, at *7 (W.D. Pa. Dec. 30, 2018) (citing authority).  Accordingly, Plaintiff's "failure to protect" and "deliberate indifference" claims will be dismissed.

### c.  Count V Claim Against Smock

In Count V of the SAC, Plaintiff asserts an Eighth Amendment claim against Smock for allegedly taking the position that Plaintiff suffered from hypochondria and that his objectively documented symptoms were "psychological in nature."  SAC ¶65.  As the Chief Healthcare Administrator for SCI-Albion, Smock was not in a position to render medical care to Plaintiff, and there is nothing in the SAC or accompanying exhibits to plausibly suggest that Smock

prevented Plaintiff from obtaining access to the prison's medical providers. The Court has already determined that Boggio and Halligan did not exhibit deliberate indifference to Plaintiff's serious medical needs by virtue of their similar (alleged) conduct; therefore, Plaintiff's Eighth Amendment claim against Smock is even more attenuated, since she is not a medical provider, and was not in a position to second-guess the medical conclusions of Plaintiff's treating physicians. *See Spruill*, 372 F.3d at 236 ("If a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (ruling that non-medical defendants "[could not] be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"); *Judge v. Med. Dep't at S.C.I. Green*e, Civ. A. No. 05-1776, 2007 WL 1576400, at *4 (W.D. Pa. May 31, 2007) ("The rule is that where a prisoner is being treated by a physician, a non-physician prison administrator cannot be deemed deliberately indifferent simply because the lay administrator did not challenge the physician's care or respond directly to a prisoner's requests for more or different treatment.") (citing authority); *Ascenzi v. Diaz*, Civ. A. No. 05-1656, 2007 WL 1031516, at *5 (M.D. Pa. Mar. 30, 2007) (holding that prison's health care administrator lacked any medical authority to dictate the course of inmate's treatment and could not be considered deliberately indifferent for failing to second-guess the treating physician's assessment of the inmate's medical needs). Accordingly, the claims in Count V against Smock will be dismissed.

### d. Count II Claims Against Clark and Adams

In Count II of the SAC, Plaintiff alleges First Amendment, Eighth Amendment, and Fourteenth Amendment violations on the part of Clark and Adams based on their failure to

"intercede" and "correct" the wrongs that Plaintiff allegedly endured in the course of seeking medical treatment and grieving his medical complaints. SAC ¶62. Plaintiff claims that, during an encounter with Clark and Adams on August 2, 2017, he showed them his swollen abdomen and legs and registered complaints about the Medical Department that were supported with documentation. *Id.* Although Clark and Adams assured Plaintiff that they would meet with the CCS Regional Medical Director and arrange a medical consult for Plaintiff, "the promised consultation never took place." *Id.*

As discussed above, prison officials who are not physicians cannot be considered deliberately indifferent simply because they fail to respond directly to the medical complaints of a prisoner who is already in the care of the prison's physician. *See Spruill,* 372 F.3d at 236; *Durmer,* 991 F.2d at 69. Here, Plaintiffs own averments and pleading exhibits demonstrate that he received substantial, on-going medical attention from the prison's medical staff during the time period in question. It is also clear from Plaintiff's own averments that Clark and Adams were apprised of the fact that Plaintiff was under the care of the prison medical staff. Moreover, this Court has already determined that, based on the Rule 12(b)(6) record, that Plaintiff received constitutionally adequate medical care. Accordingly, Plaintiff cannot sustain a claim against Clark and Adams for deliberate indifference based on a theory of supervisory liability. *See, e.g., In re Wetzel*, C.A. No. 15-160 Erie, 2016 WL 4945315, at *3 (W.D. Pa. Sep. 16, 2016) (rejecting a claim of deliberate indifference against a non-medical defendant because the plaintiff acknowledged that he had received treatment from prison medical personnel).

Plaintiff also appears to be asserting a First Amendment violation on the part of Clark and Adams based on their alleged "adoption of the practice of accepting and/or using fraudulent information to deny (meritful) [sic] grievances." SAC ¶62. This claim is patently deficient

because, as stated above, the First Amendment does not guarantee Plaintiff the right to a successful grievance procedure -- or any grievance procedure for that matter, *Jones,* 433 U.S. at 137-138; *Bakhtiari,* 2017 WL 2778524, at *14, and Plaintiff has not otherwise alleged facts that demonstrate he was actually denied access to the courts. Moreover, Plaintiff has not alleged any factual content in support of his conclusory averment that Clark or Adams "adopted" the practice of accepting and/or using "fraudulent" information in connection with the grievance process. Consequently, Plaintiff's First Amendment claims against Clark and Adams will be dismissed.

### e. Count VI Claims Against Edwards

In Count VI of the SAC, Plaintiff asserts an Eighth Amendment violation on the part of Edwards based on actions he took in: (i) intercepting request slips and/or sick call slips addressed to medical providers and returning them to Plaintiff; and (ii) turning Plaintiff away from the Medical Department during an encounter on January 5, 2018. SAC ¶66. According to Plaintiff, Edwards' actions demonstrated "deliberate indifference to [his] 8th Amendment Right of Access to qualified Medical Personnel." *Id.*

The record before the Court shows that, on June 6, 2017, Plaintiff sent a request slip to Stroup seeking "a follow-up for the ongoing issues over the past 9 months." SAC Ex. J, ECF No. 57-13. Plaintiff explained that, based on inquiries made of a local hospital, his mother believed that Plaintiff might be suffering from systemic lupus erythematosus and also might have experienced mini strokes. *Id.* Edwards returned the slip to Plaintiff the following day with the notation, "There is no request here. If you are having problems place a sick call to be seen." *Id.*

Subsequently, on June 21, 2017, Plaintiff addressed an inmate request slip to a "Nurse Owens" in the Medical Department formally asking for "an Antinuclear Antibody panel test" as well as a measurement of his "inflammation levels," based on his perception that he was

experiencing "22 of 25 symptoms of systemic lupus erythematosus." SAC Ex. P, ECF No. 57-12. Edwards responded to the request slip the next day, writing: You can not order lab tests. You must be seen, assessed, and if the PA, NP, or MD decides, it can be ordered." *Id.*

On January 5, 2018, Plaintiff reported to the Medical Department with complaints that he was spitting up "unreasonable amounts" of blood and experiencing a sharp slashing pain in his neck and chest, which Plaintiff believed was being caused by bone shards from his nasal passages lodging in his throat. SAC Ex. H1-H2, ECF No. 57-17. Plaintiff indicated that he wanted to see Smock "and a provider that has the authority to send [him] to [UPMC Hamot] for an emergency." SAC Ex. H-2, ECF No. 57-17. Instead, Plaintiff encountered Edwards, who refused to summon Smock or any medical provider other than a nurse. *Id.* Plaintiff later grieved the incident, claiming that he was denied an examination by a "qualified professional" and that Edwards then turned him away from the medical department under an implied threat of sending him to the RHU. SAC Ex. H-1.

Contemporaneous records from Plaintiff's grievance denial indicate that, during this encounter, Plaintiff was reportedly aggressive and belligerent and claimed that he had had food stuck in his throat for two weeks. SAC Ex. H-4, ECF No. 57-17. Plaintiff's vital signs were nevertheless found to be normal, his skin was warm and dry, and he was able to swallow "and yell at staff without difficulty." *Id.* Edwards thus triaged the situation and determined that Plaintiff displayed no signs or symptoms of having a chard lodged in his throat. Because Plaintiff had undergone a medical assessed the previous day, Edwards concluded that there was no need for him to see a provider and sent him away. *Id.* Notwithstanding this, Plaintiff returned to the Medical Department within a couple hours, reporting the same symptoms. SAC Ex. H3, ECF No. 57-17. Halligan concluded that Plaintiff's complaints were sinus related and

deferred seeing him at that time.  SAC Ex. H3-H4.  Instead, informed him that she would order him sinus medication and see him the following week. *Id.*

Defendants contend, and this Court agrees, that Edwards' alleged actions, as set forth in the SAC and accompanying exhibits, do not plausibly establish deliberate indifference on his part to serious medical needs.  Deliberate indifference may be shown by, among other things, an intentional refusal to provide care, delayed medical treatment for non-medical reasons, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer*, 991 F.2d at 68.  No such showing has been alleged here. Edwards' actions with respect to "intercepting" and responding to request slips did not deny Plaintiff access to medical care:  in his June 7, 2017 notation, Edwards merely advised Plaintiff of the appropriate procedure for submitting a sick call form; in his June 22, notation, Edwards correctly advised Plaintiff that only a physician's assistant, nurse practitioner, or doctor could order laboratory testing.

With respect to Edwards' alleged conduct on January 5, 2018, Plaintiff has pled behavior that could be considered insensitive or perhaps unprofessional.  However, the record before the Court does not support an inference that Plaintiff was denied treatment for his serious medical needs, since his own grievance records indicate that:  he was triaged on the day in question by a nurse who checked his basic vital signs; he had been seen in the medical department just the day before for similar complaints; and he was able to return to the medical department and contact Halligan about his medical concerns later that same day.  In addition, Edwards' alleged actions must be judged in the context of the entire Rule 12(b)(6) record which, as has been noted, sets forth an extensive history of medical treatment.  Given Edwards' awareness that Plaintiff was under a physician's care during the time in question, and given the lack of any objective medical signs to establish a substantial risk of imminent serious harm, Edwards' alleged conduct on

January 5, 2018 does not arise to the level of deliberate indifference to serious medical needs. *See Pearson v. Prison Health Servs.,* 850 F.3d 526, 540 n.4 (3d Cir. 2017) ("Given that it is the physician with the ultimate authority to diagnose and prescribe treatment for the prisoner, a nurse who knows that the prisoner is under a physician's care is certainly "justified in believing that the prisoner is in capable hands," *id.* so long as the nurse has no discernable basis to question the physician's medical judgment."). Plaintiff's Eighth Amendment claim against Edwards will therefore be dismissed.

### f.  Amendment

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir.2008). Based on the foregoing discussion, the Court concludes that Plaintiff's federal claims are incapable of remediation; therefore, all of his claims asserted under 42 U.S.C. §1983 will be dismissed with prejudice.

### B.  State Law Claims

Plaintiffs' SAC also includes state law claims at Counts III, IV, V, VII and VIII for alleged medical malpractice and negligence. The Medical Defendants seek dismissal of these claims on the ground that Plaintiff failed to file a Certificate of Merit ("COM") as required by Pennsylvania Rule of Civil Procedure 1042.3. That rule provides, in relevant part, that:

> In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, . . . the plaintiff . . . shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the . . . party that either

***

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited [by the defendant] . . . fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> \*\*\*
>
> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or,
>
> \*\*\*
>
> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

Pa. R. Civ. P. 1042.3(a) ("Notes" omitted). Rule 1042.3 is "substantive state law that must be applied" by federal district courts, *Schmigel v. Uchal*, 800 F.3d 113, 115 (3d Cir. 2015), even in cases involving *pro se* litigants and incarcerated individuals. *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008) (unpublished).

In this case, Plaintiff's operative pleading was filed on June 22, 2018. ECF No. 57. Within sixty (60) days thereafter, on August 6, 2018, Plaintiff filed his "Motion for the Determination of a Certificate of Merit as Unnecessary," ECF No. 66, which remains pending before the Court. In his motion, Plaintiff asserts that, pursuant to Rule 1042.3(a)(3), no COM is required because the merit of his claims is so obvious that a jury of laypersons could find in his favor at trial without the benefit of expert testimony. *Id.*[3]

The exception cited by Plaintiff is "very narrow" and only applies "where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824

---

[3] The Court recognizes that Plaintiff filed a similar motion in connection with the Defendants' prior motion to dismiss an earlier iteration of Plaintiff's pleading. *See* ECF No. 32. By text order entered on June 29, 2018, this Court denied Plaintiff's motion. ECF No. 60. Upon further consideration in light of Plaintiff's invocation of Rule 1042.3(a)(3), the Court concludes that Plaintiff's de facto certification is sufficient to support his state law claims for professional negligence at this procedural juncture.

A.2d 1140, 1145 (Pa. 2003). Nevertheless, it appears to be the Plaintiff's prerogative, under Pennsylvania law, to invoke this exception by filing the requisite certification. *See Liggon-Redding v. Estate of Sugarman,* 659 F.3d 258, 265 and n.5 (3d Cir. 2011) (holding that the district court abused its discretion by ruling, at the Rule 12(b)(6) stage, that the plaintiff's claims would require expert testimony, because "[t]here is no basis in Pennsylvania law that would permit a district court to reject a filing under Rule 1042.3(a)(3) in favor of one of one filed under Rule 1042.3(a)(1)"; rather, "Pennsylvania law expressly allows a plaintiff to proceed on the basis of a certification that expert testimony will not be required to provide her claim"); *see also Bilinski v. Wills Eye Hosp.,* --- F. App'x ---, 2019 WL 168907, at *2 (3d Cir. Jan. 11, 2019) (holding that the district court erred by granting the defendants' motion to dismiss on the basis that the plaintiff's certificate of merit filed under Rule 1042.3(a)(3) was inadequate). As the U.S. Court of Appeals for the Third Circuit has observed, "the consequence of such a filing is a prohibition against offering expert testimony later in the litigation, absent 'exceptional circumstances.'" *Liggon-Redding,* 659 F.3d at 265 (citing Pa. R. Civ. P. 1042.3(a)(3), Note). Regardless, "[a] filing under [Rule 1042.3(a)(3)] allows the case to proceed to discovery, leaving the consequence of [the plaintiff's] decision [to proceed without the benefit of expert testimony] to be dealt with at a later stage of the litigation, such as summary judgment or trial." *Id.; see Bilinski,* 2019 WL 168907, at *2 ("A COM under Rule 1042.3(a)(3) that indicates the plaintiff will not adduce expert testimony may be an appropriate basis for summary judgment, but it does not provide a ground for granting a Rule 12(b)(6) dismissal.").

In this case, as noted, Plaintiff is proceeding *pro se.* Consequently, this Court is obliged to construe his filings liberally. *See Liggon-Redding,* 659 F.3d at 265 (citing *Hartmann v. Carroll,* 492 F.3d 478, 482 n.8 (3d Cir. 2007)). A fair reading of Plaintiff's motion suggests that

he is invoking the provisions of Rule 1042.3(a)(3). Accordingly, the Court will construe Plaintiff's motion as a Rule 1042.3(a)(3) certification, thereby allowing his negligence claims to proceed to discovery. Because Plaintiff does not need this Court's authorization at this juncture in order to invoke Rule 1042.3(a)(3), the Plaintiff's motion for a determination in that regard will be denied as moot. Plaintiff is advised, however, that, consistent with the Third Circuit's admonitions in *Liggon-Redding* and *Bilinski,* he will henceforth be precluded from relying on expert testimony in support of his state law claims, absent "exceptional circumstances." In addition, the fact that Plaintiff's state law claims are advancing at this point does not necessarily mean that he will ultimately prevail at trial, or even survive summary judgment, should the Defendants challenge the sufficiency of his claims at either juncture. In particular, this Court is not presently rendering any opinion or judgment as to whether Plaintiff's state law claims will ultimately remain viable in the absence of expert testimony. Rather, for present purposes, the Court merely holds that Plaintiff's state law claims should advance past the motion to dismiss stage.

## IV. CONCLUSION

Based upon the reasons set forth above, Plaintiff's federal claims under 42 U.S.C. §1983 will be dismissed with prejudice. Because there are no remaining federal claims against any of the Defendants, any potential basis for this Court to consider Plaintiff's state law claims lies solely within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Having dismissed the federal claims for failure to state a claim upon which relief may be granted, the Court will exercise is discretion to decline supplemental jurisdiction over Plaintiff's state law claims. *See id*. at §1367(c)(3). Accordingly, the state law claims will be dismissed without prejudice to Plaintiff's right to pursue those claims in state court.

An appropriate order follows.

_Susan Paradise Baxter_
SUSAN PARADISE BAXTER
United States District Judge