# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES HORSH,          )
)
         Plaintiff,     )
)      Case No. 1:17-cv-316-SPB[1]
     v.           )
)
MICHAEL CLARK, et al.,    )
)
        Defendants.   )

## MEMORANDUM OPINION

## I.    Introduction

Plaintiff Charles Horsh commenced this *pro se* civil rights action in November 2017 seeking redress for, primarily, alleged violations of his Eighth Amendment rights based upon the allegedly deficient medical care that he received while incarcerated at SCI-Albion. Plaintiff's Amended Complaint, ECF No. 57 – the operative pleading – was directed at the following Defendants: Michael Clark ("Clark"), Superintendent of SCI-Albion; Melinda Adams ("Adams"), Deputy Superintendent of Centralized Services; Jeri Smock ("Smock"), Chief Healthcare Administrator for SCI-Albion; Michael Edwards ("Edwards"), the prison's registered nursing staff supervisor; Michael J. Boggio ("Boggio"), the former Medical Director of SCI-Albion's Medical Department; Rekha Halligan ("Halligan"), Boggio's successor as Medical Director; Daniel Stroup ("Stroup") and Alexis Secara ("Secara"), both physician's assistants in the prison's Medical Department; and Cynthia Chuzie ("Chuzie"), a nurse practitioner in the Medical Department. Throughout his eight-count Amended Complaint, Plaintiff asserted a host

---

[1] This case was originally assigned to U.S. District Judge Cathy Bissoon and referred to the undersigned in her capacity as U.S. Magistrate Judge. On September 14, 2018, the undersigned was sworn in as a United States District Judge. Thereafter, this action was reassigned to this Court's docket. ECF No. 70.

1

of federal claims under 42 U.S.C. §1983 as well as state law claims predicated on medical negligence.

On March 18, 2019, the undersigned issued a Memorandum Opinion and Order dismissing all of Plaintiff's federal §1983 claims pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 78 and 79. The Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims and dismissed those causes of action without prejudice to Plaintiff's right to pursue them in state court.

Presently pending before the Court are two motions filed by Plaintiff: (i) a Motion to Alter or Amend Judgment, ECF No. 80, and (ii) a Motion for Leave to Amend Caption and Amend Complaint, ECF No. 82. For the reasons that follow, Plaintiff's Motion to Alter or Amend Judgment will be granted in part and denied in part. Plaintiff's motion for leave to amend will be denied without prejudice.

## II.  Plaintiff's Motion to Alter or Amend Judgment (ECF No. 80)

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, a party is permitted to file a motion to alter or amend a judgment within 28 days after the entry of the judgment in question. The standard for obtaining relief under Rule 59(e) is "difficult . . . to meet." *Dawson v. Wheeler*, No. CV 19-1355-CFC, 2020 WL 730306, at *1 (D. Del. Feb. 13, 2020). To do so, a movant must show one of the following: (1) an intervening change in the law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010); *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

"'[T]here is no governing standard for what constitutes a manifest injustice as the term applies to Rule 59(e) and ... courts should 'look at the matter on a case-by-case basis' to

determine whether a judgment will work a manifest injustice.'" *Hill v. Lappin*, No. 3:11-CV-1609, 2019 WL 5260397, at *3 (M.D. Pa. Oct. 17, 2019) (quoting *Conway v. A.I. duPont Hosp. for Children*, No. 04-4862, 2009 WL 1492178, at *6 (E.D. Pa. May 26, 2009)) (alteration and ellipsis in the original). However, "federal courts have a strong interest in the finality of judgments," and therefore, "motions for reconsideration should be granted sparingly." *Continental Cas. Co. v. Diversified Indus., Inc.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

Notwithstanding this rigorous standard, the undersigned finds -- after careful consideration of the Plaintiff's motion and Defendants' responses thereto, that Plaintiff's Rule 59(e) motion should be granted with respect to certain of his Eighth Amendment claims. In this case, Plaintiff has alleged that his Eighth Amendment rights were violated based on the medical Defendants' deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). This standard is met, *e.g.*, "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Additionally, prison health care providers act with deliberate indifference if they "insist[ ] on continuing courses of treatment" that they know are "painful, ineffective or entail[ ] substantial risk of serious harm to the prisoners." *White v. Napolean*, 897 F.2d 103, 109 (3d Cir. 1990).

Although the Court initially concluded that Plaintiff's pleading did not establish deliberate indifference on the part of any Defendant, the Court believes, upon further consideration, that resolution of that question must be predicated upon a review of a more

developed evidentiary record, including the relevant medical records. Accordingly, the Court will vacate its prior judgment and will allow Plaintiff to proceed to discovery on his Eighth Amendment claims against Defendants Stroup, Halligan, and Edwards, based on their alleged failure to provide constitutionally adequate treatment for his bowel impaction and his sinus related problems.

### A. *Bowel Impaction*

With regard to the first condition, Plaintiff alleges that Stoup and Halligan failed to treat his complaints of severe abdominal pain and rectal drainage over a period of some seven months, from approximately December 2016 to August 2017. ECF No. 58, ¶¶19, 27-28, 43-45. Plaintiff claims that this failure to render treatment culminated in him being placed in the prison infirmary on August 16, 2017, due to obvious fluid build-up in his legs and distention of his abdomen. Id. ¶47. After an abdominal x-ray revealed impacted stool, Halligan allegedly placed Plaintiff on a course of laxatives with the promise that she would have Plaintiff hospitalized if the initial treatments did not resolve the impaction. After her treatments failed, however, Halligan did not refer Plaintiff to an outside provider. Id. Instead, she placed Plaintiff in the prison infirmary where, Plaintiff claims, he was subjected to a "barbaric" course of laxatives, fleet enemas, stool softeners, and magnesium citrate that far exceeded the recommended dosages and resulted in excessive rectal bleeding and severe dehydration. Id. at ¶58. Plaintiff asserts that, at this point he was "fearing for his life and/or bleeding to death" and refused several days' worth of treatment; but because he would not sign a medical waiver, he could not return to general population and was thus "forced" to continue the "barbaric" treatments, despite additional abdominal x-rays showing them to be ineffective. Id.

Although Plaintiff's averments may seem exaggerated or hyperbolic, the Third Circuit Court of Appeals has admonished that even fanciful allegations are to be credited at the Rule 12(b)(6) stage. *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 789 (noting that, at the pleading stage, allegations of historical fact are assumed to be true even if they are "'unrealistic or nonsensical,'" "'chimerical,'" or "'extravagantly fanciful'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). Accepting Plaintiff's averments as true and viewing them in the most favorable light, the averments could support an inference that Stroup initially prevented Plaintiff from receiving necessary medical treatment and that Halligan later persisted in a course of treatment that was unreasonably dangerous, painful, and/or ineffective. Accordingly, Plaintiff's allegations are at least minimally sufficient to state a plausible Eighth Amendment violation based upon Stroup's and Halligan's actions relative to Plaintiff's impacted bowel condition.

### B. *Ears, Nose, and Throat Problems*

Plaintiff's Eighth Amendment claim is also predicated on the alleged failure of Stroup, Halligan, and Edwards to render constitutionally adequate treatment for his ears, nose, and throat ("ENT") problems. The Amended Complaint states, in relevant part, that Plaintiff experienced ongoing sinus infections between October 2016 and March 2017, resulting in nose bleeds, facial/jaw pain, a locking jaw, and drainage of blood and pus from his nose and throat that contained "foul-smelling black specks." ECF No. 58, ¶¶ 13-17, 20-25. Plaintiff admits that he was prescribed two antibiotics during this time but claims they were ineffective. Id. at ¶¶21-23, 25. On April 13, 2017 Plaintiff went to the prison medical department with complaints of migraines and sinus drainage but was directed back to his housing unit on orders from Stroup. Id. ¶¶27-28. After passing out that night and suffering a "gash" to his eye, he was placed in the infirmary overnight. Plaintiff claims that he was later released and ordered back to his housing

unit without the benefit of consulting with a health care provider. Id. ¶29. He believes that this was done at the direction of Halligan. Id. Plaintiff presented to the medical department again the following week with complaints of dizziness and throbbing head and neck pain. Id. ¶30. On April 24, 2017, Halligan allegedly spoke to Plaintiff without examining him, denied him access to a hospital, and ordered him back to general population, threating to place him in the RHU if he disobeyed. Id. ¶31. Plaintiff claims he started to get a puree diet that evening because of difficulty chewing and swallowing; however, Halligan cancelled the diet in retaliation for Plaintiff having filed an administrative grievance against her. Id. Thereafter, on May 1, 2017, Plaintiff was evaluated by the dentist, who noted that he had an impacted wisdom tooth and an "abnormality" in his jaw. Id. ¶33. Plaintiff was referred from there to an oral surgeon, who determined that Plaintiff exhibited excessive teeth grinding, possibly from fluid buildup around the muscles of his face and jaw. Id. ¶34. The oral surgeon recommended further study by the medical department, physical therapy, muscle relaxers, and NSAID pain relievers. Id. ¶35. When Plaintiff subsequently saw Halligan on May 23, 2017, however, Halligan indicated that nothing further would be done in regards to Plaintiff's jaw issue, disregarded Plaintiff's complaints of pain, and refused to provide any pain relievers. Id. ¶36.

Months later, Plaintiff continued to seek treatment for his ENT and sinus-related problems. Id. ¶¶49-51. Plaintiff claims that Halligan and Stroup initially "ignored" his concerns about the progression of his ENT symptoms and denied necessary testing. Id. ¶49. In a follow-up appointment, Plaintiff attempted to discuss his concerns with Halligan but Halligan merely gave Plaintiff a "New Year's resolution" speech about "getting to know" him better. Id. ¶50. On yet another occasion, Plaintiff sought medical assistance after coughing up "unreasonable" amounts of blood and experiencing a "slashing" pain running down his neck into his chest;

however, Edwards turned Plaintiff away from the medical department and threatened to place him in the RHU. Id. ¶¶50-51. Plaintiff avers that, despite the existence of objective studies showing maxillary sinus mucosal disease, Halligan Stroup, and Edwards continued to accuse Plaintiff of malingering, faking and exaggerating his symptoms, allowing Plaintiff's condition to progress unchecked. Id. ¶¶55-56. In his motion for reconsideration, Plaintiff asserts that he has since been informed that his jaw is pinching his estuary tube, precluding the tube from draining properly. Plaintiff claims that, as a result of his condition, he recently ruptured his ear drum while sneezing.

Accepting as true all of the averments in the Amended Complaint, one could infer that Defendants deliberately denied Plaintiff treatment for a serious medical condition, that Halligan declined to follow the oral surgeon's treatment recommendations, and/or that Halligan denied Plaintiff medical treatment for a non-medical reason (i.e., retaliation for a past grievance filed against her). Plaintiff has therefore stated a plausible Eighth Amendment claim. To be sure, further discovery – including an examination of the underlying medical records – may well disprove Plaintiff's claims of deliberate indifference; but – at this stage at least – Plaintiff has alleged enough factual content to raise a reasonable expectation that discovery will reveal evidence of the necessary elements. That is all Plaintiff need do at the pleading stage to survive a Rule 12(b)(6) motion. See *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

Although the pleading record shows that Plaintiff received a plethora of medical attention, the Court will grant reconsideration, out of an abundance of caution, as to the foregoing aspects of his Eighth Amendment claims. The Court will also vacate its judgment

dismissing the state law claims without prejudice.  In all other respects, Plaintiff's motion will be denied.

### III.    <u>Plaintiff's Motion for Leave to Amend Caption/Amend Complaint (ECF No. 82)</u>

Plaintiff has also filed a motion for leave to amend his pleading as well as the caption of the case.  Specifically, Plaintiff seeks to withdraw his claims against Defendants Clark and Adams and strike these two Defendants from the caption of the case.  Insofar as the claims against Clark and Adams were previously dismissed with prejudice, this aspect of Plaintiff's motion is redundant and will be denied as moot.

Plaintiff also requests leave to amend his complaint in order "to correct clear errors of fact and to correct factual omissions" in his Amended Complaint.  ECF No. 82 ¶3.  Plaintiff has not appended a copy of his proposed amended pleading, however, nor does his motion otherwise specify what the pleading "errors and/or omissions" are.  Accordingly, Plaintiffs' motion for leave to file a second amended complaint is procedurally deficient and will therefore be denied without prejudice.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247 (3d Cir. 2007) (motions to amend must include a copy of the proposed amended pleading).  Plaintiff may renew his request by filing a motion for leave to amend with a copy of his proposed amendment attached thereto.  *Id.*

An appropriate Order follows.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge

cc: Charles Keith Horsh
    KK 2691
    SCI Somerset
    1590 Walters Mill Road
    Somerset, PA 15510
    (via U.S. mail, first class)

    All counsel of record
    (via CM/ECF)