## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES HORSH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:17-cv-316-SPB[1] |
| v. | ) | |
| | ) | |
| MICHAEL CLARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Plaintiff Charles Horsh, an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 based on the allegedly inadequate medical care that he received while incarcerated at SCI-Albion.  In his Amended Complaint, Plaintiff identified the following individuals, each of whom is employed by the DOC or the private medical entity contracted by the DOC to provide medical services to inmates at SCI-Albion, as Defendants:  Michael Clark ("Clark"), Superintendent of SCI-Albion; Melinda Adams ("Adams"), Deputy Superintendent of Centralized Services; Jeri Smock ("Smock"), Chief Healthcare Administrator for SCI-Albion; Michael Edwards ("Edwards"), the prison's registered nursing staff supervisor; Michael J. Boggio ("Boggio"), the former Medical Director of SCI-Albion's Medical Department; Rekha Halligan ("Halligan"), Boggio's successor as Medical Director; Daniel Stroup ("Stroup") and Alexis Secara ("Secara"), both physician's assistants in the prison's Medical Department; and Cynthia Chuzie ("Chuzie"),

---

[1] This case was originally assigned to U.S. District Judge Cathy Bissoon and referred to the undersigned in her capacity as U.S. Magistrate Judge. On September 14, 2018, the undersigned was sworn in as a United States District Judge. Thereafter, this action was reassigned to this Court's docket. ECF No. 70.

a nurse practitioner in the Medical Department.  ECF No. 57.  Plaintiff primarily alleged that Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs.  *Id.*  Plaintiff also asserted state law claims predicated on medical negligence.  *Id.*

On March 18, 2019, the undersigned issued a Memorandum Opinion and Order dismissing all of Plaintiff's federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 78 and 79.  The Court declined to exercise supplemental jurisdiction over Plaintiff's state law claims and dismissed those causes of action without prejudice to Plaintiff's right to pursue them in state court.  *Id.*

Shortly thereafter, Plaintiff filed a Motion to Alter or Amend Judgment, ECF No. 80, and a Motion for Leave to Amend Caption and Amend Complaint, ECF No. 82.  After careful consideration of the Plaintiff's motion and Defendants' responses thereto, the Court granted Plaintiff's Rule 59(e) motion and reinstated the following claims: (1) an Eighth Amendment deliberate indifference claim against Halligan, Stroup, and Edwards based on their alleged failure to adequately treat Plaintiff's ear, nose and throat ("ENT") condition; (2) an Eighth Amendment deliberate indifference claim against Halligan and Stroup based on their alleged failure to adequately treat Plaintiff's impacted bowel condition; and (3) a state tort medical malpractice/negligence claim against Halligan, Stroup, and Smock.

Following the close of discovery, the DOC-employed Defendants ("DOC Defendants"), Edwards and Smock, filed a Motion for Summary Judgment accompanied by a Brief in Support, Concise Statement of Material Facts, and an Appendix of Exhibits.  ECF Nos. 131-134.  Plaintiff responded by filing a Brief in Opposition and a Responsive Concise Statement of Material Facts, ECF Nos. 147-148, to which Edwards and Smock filed a Reply.  ECF No. 149.

Contemporaneously, the privately-contracted medical provider Defendants ("Medical Defendants") – Boggio, Chuzie, Halligan, Secara, and Stroup – filed their own Motion for Summary Judgment, Brief in Support, Concise Statement of Material Facts, and Appendix of Exhibits.  ECF Nos. 135-138.  Plaintiff did not respond to the Medical Defendants' submissions.  Accordingly, each motion is ripe for adjudication.

## II.   **Factual Background**

The following factual recitation is derived primarily from Plaintiff's medical records, *see* ECF Nos. 136-1 and 148-2, and the Concise Statements of Fact submitted by the parties, to the extent they are supported by the record.  *See* ECF Nos. 133, 136, and 148.[2]  According to Plaintiff, he began to experience a severe sinus infection on or about October 13, 2016, accompanied by sores, lightheadedness, issues with equilibrium, and bloody nose.  ECF No. 57 ¶ 13.  Physician's Assistant ("PA") Secara examined Plaintiff on October 18, 2016, noting small papules/blisters in several places on Plaintiff's scalp and arm.  ECF No. 136 ¶ 4; ECF No. 136-1 at pp. 340, 341.  Suspecting scabies, Secara placed Plaintiff on "scabies protocol."  *Id.*

On October 24, 2016, Plaintiff visited Secara with complaints that his rash had worsened and that the prescribed ointment had not provided relief.  ECF No. 136 ¶ 5; ECF No. 136-1 at p. 340.  Plaintiff also complained that he was experiencing migraines and severe sinus

---

[2] Although the Court granted Plaintiff permission to respond to the Medical Defendants' Concise Statement of Material Facts without copying each of their factual averments, *see* ECF No. 150 at 3, Plaintiff failed to do so. Accordingly, to the extent that Plaintiff has failed to respond to any concise statement of material fact, that fact will be deemed admitted. *See* Local Rule 56.C.1 (requiring non-moving parties to a motion for summary judgment to file a responsive concise statement in which they must: respond to each numbered paragraph in the movant's concise statement; admit or deny the facts contained in the movant's concise statement; set forth the basis for denial if any fact within the movant's concise statement is not entirely admitted by the non-moving party, with appropriate citation to the record; and set forth, in separately numbered paragraphs, any other material facts at issue).

The DOC Defendants similarly failed to respond to the Additional Statements of Material Fact set forth in Plaintiff's Responsive Concise Statement to their own Concise Statement. *See* ECF No. 148. To the extent that they are material, those facts will also be deemed admitted for purposes of this motion.

pressure. ECF No. 57 ¶ 15. Secara noted that his rash remained persistent despite some improvement and planned to try a steroid cream. ECF No. 136 ¶ 5; ECF No. 136-1 at p. 340.

The following day, October 25, 2016, Stroup and a registered nurse visited Plaintiff in the Restricted Housing Unit ("RHU") after he hit his head on the toilet. ECF No. 136 ¶ 5; ECF No. 136-1 at pp. 331, 342, 344. Plaintiff reported that he became dizzy when he stood up to use the toilet and fell. *Id.* Upon examination, Plaintiff's blood pressure was recorded as 126/76 and a quarter-sized contusion and small laceration were observed on his head. *Id.* Stroup noted that Plaintiff was on Geodon, a psych medication. *Id.* Medical personnel cleaned the laceration and Stroup placed an order for Plaintiff to undergo an EKG study to rule out long QT syndrome secondary to dizziness on Geodon. *Id.*

Plaintiff's EKG was performed on October 27, 2016. ECF No. 136 ¶ 7; ECF No. 136-1 at p. 336. The results of that test were normal. *Id.*

On October 29, 2016, Plaintiff experienced a hypertensive event after which he complained of dizziness. ECF No. 136 ¶ 9; ECF No. 136-1 at pp. 345-346. Plaintiff's blood pressure was recorded as 138/88 and his pulse was 130. *Id.* The examining nurse made a preliminary determination of tachycardia. *Id.*

Plaintiff visited another physician's assistant the next day for a follow-up and reported ongoing dizziness, palpitations, diaphoresis, syncope, headache, and photophobia. ECF No. 136 ¶ 10; ECF No. 136-1 at p 23, 347. Plaintiff complained of similar events in the past and reported heavy palpitations and a history of PTSD. *Id.* Noting that his orthostatic blood pressure was within normal limits, the PA posited that his symptoms, while potentially cardiac in nature, were most likely caused by a migraine. *Id.* The PA ordered Benadryl 50mg twice daily for five days

to investigate if the dizziness was due to an inner ear imbalance and planned to obtain a dual echo study, blood work, and a follow up examination. *Id.*

Plaintiff visited Secara on November 2, 2016, for a follow-up. ECF No. 136 ¶ 11; ECF No. 136-1 at pp. 347-348. Plaintiff had previously reported another fall after using the bathroom. *Id.* Secara observed that a recent EKG was within normal limits and that Plaintiff had no history of heart disease. *Id.* Secara also noted tinnitus and fluid in Plaintiff's left ear but no blockage. *Id.* Secara's initial assessment included likely vasovagal syncope[3] and a plan to obtain updated lab work, a carotid ultrasound, and a CT scan of Plaintiff's head. *Id.*

On November 3, 2016, Secara saw Plaintiff for an emergency visit after he reported a sudden feeling like someone smacked him in the chest while watching tv. ECF No. 136 ¶ 12; ECF No. 136-1 at pp. 23, 288, 335, 357-358. Plaintiff denied loss of consciousness but noted that he had a headache and felt anxious with occasional butterflies in his stomach. *Id.* Stroup performed an EKG which fell within normal limits. *Id.* Plaintiff appeared to be in no acute distress, was negative for carotid bruits, and presented as alert, well-oriented, and neurologically intact. *Id.* Nevertheless, Secara sent him to the Hamot Hospital Emergency Department for a CT scan of his head. *Id.*

Upon arriving at the Hamot emergency department, Plaintiff had lab work taken and underwent a CT Scan of his head and brain. ECF No. 136 ¶ 13; ECF No. 136-1 at pp. 312-316. Plaintiff's examination revealed well-aerated paranasal sinuses and mastoid air cells and no acute abnormalities. *Id.* Following the study, Dr. Vanessa Banks met with Plaintiff and explained that his vitals were stable and that an EKG study showed no acute findings. *Id.* Dr. Banks explained

---

[3] According to the Mayo Clinic, vasovagal syncope occurs when a person faints because their body overreacts to certain triggers, such as the sight of blood or extreme emotional distress. *See* https://www.mayoclinic.org/diseases-conditions/vasovagal-syncope/symptoms-causes/syc-20350527 (visited 9/24/2021).

that he likely had a mild concussion secondary to one of his falls and that, while the etiology of the syncopal episodes was unclear at that time, they appeared to be vasovagal in nature. *Id.* Dr. Banks advised Plaintiff to follow up with his primary care provider. *Id.*

On November 8, 2016, Secara evaluated Plaintiff for ongoing complaints of itchiness and dizziness. ECF No. 136 ¶ 14; ECF No. 136-1 at p. 357. Plaintiff expressed frustration with the diagnosis from the hospital of vasovagal syncope and post-concussive syndrome. *Id.* Secara prescribed Benzoyl Peroxide for tiny red bumps noted on Plaintiff's right shoulder. *Id.*

On November 15, 2016, Plaintiff visited Dr. Boggio in the medical department for further treatment of his rash. ECF No. 57-2 at 2. Plaintiff explained his headaches, dizziness, and issues with balance. *Id.* Boggio suggested that he might be experiencing side effects from medications. *Id.* According to Plaintiff, Boggio also called him a hypochondriac and indicated that his problems were in his head. *Id.*

On December 18, 2016, Plaintiff was pulled to the triage room of the RHU to be assessed for complaints of abdominal pain. ECF No. 136 ¶ 17; ECF No. 136-1 at p. 356. Plaintiff reported that his bowel movements consisted primarily of mucous and blood. *Id.* On exam, Plaintiff's bowel sounds were positive in all four quadrants and his abdomen was soft and non-rigid. *Id.* He complained of pain upon palpation of his left upper and lower quadrants. *Id.* Plaintiff was instructed to place a sick call slip and to notify staff if conditions worsened. *Id.*

On December 22, 2016, Stroup examined Plaintiff in the RHU for his complaints of constipation, abdominal pain, and infrequent bowel movements since being discontinued from a medication called Colace. ECF No. 136 ¶ 18; ECF No. 136-1 at p. 356. Plaintiff did not appear to be in acute distress and could stand at his cell door without difficulty. *Id.* Stroup's assessment

included constipation and gastrointestinal upset with plans to prescribe Miralax and to follow up with an abdominal and digital rectal exam. *Id.*

Plaintiff presented to Stroup for a follow-up exam on December 23, 2016. ECF No. 136 ¶ 19; ECF No. 136-1 at p. 355. On exam, his abdomen was soft, non-tender and non-distended, and his lower quadrants were moderately diffuse with bowel sounds in all four quadrants. *Id.* Plaintiff was negative for tympany/dullness on percussion. *Id.* No mass was identified on palpation and a digital rectal exam was benign. *Id.* Stroup's assessment included anal fissures and irritable bowel syndrome. Plaintiff was advised to continue treatment with Miralax. *Id.*

On December 29, 2016, Plaintiff again reported to medical for an emergency sick call based on complaints of palpitations. ECF No. 136 ¶ 20; ECF No. 136-1 at p. 355. Plaintiff's pulse was recorded as 98 and his blood pressure was 160/87. *Id.* He denied radiating pain down his arms and did not appear to be in acute distress. *Id.* He expressed anxiety concerning his release from the RHU. *Id.* Plaintiff was discharged with symptoms of vasovagal syncope and post-concussive syndrome and directed to follow up with psych and to return to medical if symptoms worsened. *Id.*

On January 23, 2017, Secara noted that she discussed Plaintiff's case with a physician in the psych department. ECF No. 136 ¶ 23; ECF No. 136-1 at p. 354. It was concluded that Plaintiff might be suffering from traumatic migraines and headaches. *Id.* Noting a history of anxiety, Secara prescribed Topamax 25mg. *Id.*

On February 7, 2017, Plaintiff visited Stroup with complaints of pressure, bloating, cramps, and mucous from his rectum. ECF No. 136 ¶ 25; ECF No. 136-1 at p. 353. After examining his abdomen, Stroup's suggested that Plaintiff's symptoms stemmed from irritable bowel syndrome and discussed a reaction of mucous membranes to irritation. *Id.*

On March 15, 2017, Plaintiff presented to Secara with complaints of smelling rotting meat and pain in his jaw. ECF No. 136 ¶ 27; ECF No. 136-1 at pp. 21, 287, 312. Plaintiff reported congestion but said he was able to breathe and indicated that his dizziness had not improved with Topamax. *Id.* Secara noted no sinus tenderness on examination and observed that the CT scan taken at Hamot in November 2016 showed that Plaintiff's paranasal sinuses were well aerated. *Id.* Plaintiff's throat had no evidence of tonsillar edema or exudate. *Id.* An X-ray conducted later that day revealed air-fluid level in the left maxillary sinus. ECF No. 136 ¶ 28; ECF No. 136-1 at p. 55. Plaintiff's right maxillary sinus was clear, and no bony erosion was identified. *Id.*

On March 18, 2017, Plaintiff reported abdominal pain and bloody stool beginning six days prior. ECF No. 136 ¶ 29; ECF No. 136-1 at pp. 228-232. On exam, Plaintiff's abdomen was soft and tender. *Id.* Plaintiff reported some pain upon gentle palpation of the lower abdomen but noted a normal bowel movement that morning. *Id.* Stroup was notified of Plaintiff's condition and a follow-up examination was scheduled.

On March 20, 2017, at 12:18 a.m., Plaintiff visited medical after passing out in his cell and hitting his face on a cabinet while standing at the toilet to urinate. ECF No. 136 ¶ 30; ECF No. 136-1 at pp. 20, 223-227, 284-286. He reported a loss of consciousness and lower abdominal pain. *Id.* His blood pressure was recorded as 100/46, his pulse was 84, and an EKG confirmed normal sinus rhythm. *Id.* An examination of his abdomen revealed bowel sounds in all four quadrants. *Id.* Stroup admitted Plaintiff to the infirmary due to hypotension. *Id.*

Later that day, Dr. Stramat examined Plaintiff in the infirmary as a follow up to his syncopal episode. ECF No. 136 ¶ 31; ECF No. 136-1 at pp. 19, 283, 284. Dr. Stramat noted that his vital signs showed normal blood pressure and pulse and that his abdomen was benign.

*Id.* An EKG revealed no significant acute changes compared to prior examinations. *Id.* Dr. Stramat noted his impression as being suspect of the fall event and indicated that, consistent with Plaintiff's history, it was most likely vasovagal in origin. *Id.* Dr. Stramat noted evidence of sinusitis on the X-ray and prescribed a course of Augmentin, 875 mg two times daily for ten days. *Id.*

On March 30, 2017, Plaintiff visited Chuzie, a registered nurse, as a follow up to his sinusitis. ECF No. 136 ¶ 33; ECF No. 136-1 at p. 283. Plaintiff reported sinus pressure, drainage, headaches, jaw pain, and tooth pain. *Id.* On exam, Chuzie noted drainage, pressure, and tenderness over frontal sinus with hyposmia (reduced sense of smell). *Id.* Chuzie's assessment included sinusitis/upper respiratory infection. *Id.* Plaintiff was advised to continue Floxacin and Claritin for ten days and follow up as needed. *Id.* Plaintiff was additionally advised to seek an appointment with dental. *Id.*

On April 3, 2017, Secara evaluated Plaintiff for his complaint of thick drainage into his throat. ECF No. 136 ¶ 34; ECF No. 136-1 at p. 282. Plaintiff reported an active cough and indicated that Levaquin was not working. *Id.* On exam, Secara noted that his lungs were clean bilaterally, his cervical and submandibular glands were non-tender/non-distended and soft, and his throat had no evidence of tonsillar enlargement. *Id.* Assessment included sinusitis and upper respiratory infection. *Id.* Secara ordered a chest X-ray due to a residual cough. *Id.*

Plaintiff underwent the requested chest X-ray on April 5, 2017. ECF No. 136 ¶ 35; ECF No. 136-1 at p. 54. No acute disease was revealed. *Id.*

On April 10, 2017, Stroup evaluated Plaintiff for continuing abdominal pain and constipation. ECF No. 136 ¶ 37; ECF No. 136-1 at p. 18, 279. Plaintiff complained of mucous with gray material which he suggested were parasites. *Id.* On exam, Stroup observed that

Plaintiff's abdomen was soft and flat although he complained of tenderness in all quadrants at the lightest of touches, out of proportion to pressure exerted. *Id.* Bowel sounds were normal in all four quadrants and no masses were noted on palpation. *Id.* Stroup assessed Plaintiff with abdominal pain and planned to have Dr. Halligan evaluate him and obtain an Ova and Parasite stool sample (O+P). *Id.*

Two days later, Plaintiff saw medical again for his complaints of continued rectum and abdominal pain. ECF No. 136 ¶ 38; ECF No. 136-1 at pp. 219-222, 282. Plaintiff indicated pain with gentle abdominal palpitation. *Id.* He was instructed to take Colace 100mg orally, twice daily, for two weeks. *Id.*

On April 14, 2017, another registered nurse examined Plaintiff for complaints of constipation and tooth pain. ECF No. 136 ¶ 39; ECF No. 136-1 at pp. 215-218, 282. He reported that he had not had a bowel movement for fourteen days and that Colace was ineffective. *Id.* He also indicated that he been seen by dental for his tooth pain and was waiting for a call out to see a specialist. *Id.* Later that day, Stroup discontinued Colace and gave a voice order for Plaintiff to take Miralax (17 grams dissolved in 8 oz. water) two times daily for ten days. *Id.*

On April 15, 2017, Plaintiff received treatment for a laceration to his right eye sustained during a fall. ECF No. 136 ¶ 40; ECF No. 136-1 at pp. 211-214; 280-282. Plaintiff reported dizziness and did not remember the fall. *Id.* On exam, his temperature was recorded as 99.4, pulse rate 100, and blood pressure 136/94. *Id.* Plaintiff was referred to Dr. Halligan. *Id.*

On April 23, 2017, Dr. Halligan admitted Plaintiff to the infirmary for 23-hour observation due to complaints of general pain. ECF No. 136 ¶ 42; ECF No. 136-1 at pp. 278-279. Plaintiff complained of dizziness and pain throughout his body and opined that fluid was building up in his lungs. *Id.* He also complained that his jaw was locked and that dental was

aware of this. *Id.* Dr. Halligan examined Plaintiff the following day and noted his complaints of jaw pain, fluid in lungs, and dizziness. ECF No. 136 ¶ 44; ECF No. 136-1 at pp. 16, 277. She noted that recent images of Plaintiff's sinuses were negative and that an etiology for his symptoms was unknown as that time. *Id.* Plaintiff was discharged from the infirmary with plans to schedule him for a consultation with an oral and maxillofacial surgeon. *Id.*

On May 2, 2017, Dr. Halligan noted that Plaintiff had been seen by the dentist for a potentially impacted wisdom tooth. ECF No. 136 ¶ 45; ECF No. 136-1 at pp. 16, 277. Dr. Halligan noted that imaging was within normal limits and that Plaintiff was stable and could speak and swallow. *Id.* Plaintiff was advised to follow up with the oral surgeon and that Dr. Halligan planned to follow up with him the following week. *Id.* An Ova and Parasite stool sample collected that day tested normal. ECF No. 136 ¶ 4; E6CF No. 136-1 at pp. 34-35.

On May 17, 2017, Plaintiff had an oral and maxillofacial surgery consultative exam with Craig Tolnay, D.M.D. ECF No. 136 ¶ 48; ECF No. 136-1 at p. 26. Following the exam, Dr. Tolnay's assessment included Broxism (grinding of teeth), Myalgia (soreness of the muscles), and Capsulitis (overuse of a ligament). *Id.* Dr. Tolnay recommended prescription NSAIDs and muscle relaxants, an occlusal guard, and basic physical therapy (tongue stretching, etc.). *Id.*

On May 23, 2017, Plaintiff visited Secara as a follow up to his complaint of lock jaw. ECF No. 136 ¶ 49; ECF No. 136-1 at pp. 16, 208-210, 274-276. Secara noted that, as per the oral surgeon, Plaintiff's complaints were not related to an impacted wisdom tooth or lockjaw. *Id.* Plaintiff's face did not appear swollen and he could talk and open his mouth around two centimeters or more. *Id.* Secara planned to have Dr. Halligan follow up with him. *Id.*

At 11:20 p.m. on May 28, 2017, a prison nurse completed an abdominal pain form reflecting Plaintiff's ongoing complaints of abdominal pain. ECF No. 136 ¶ 50; ECF No. 136-1

at pp. 203-207, 274.  Plaintiff reported that he had taken two bottles of Motrin/Aspirin/Tylenol over the last two days for abdominal and jaw pain.  *Id.*  The nurse's preliminary determination was upset stomach due to excessive NSAID use.  *Id.*

At midnight on May 29th, Dr. Halligan admitted Plaintiff to the infirmary for 23-hour observation due to abdominal pain.  ECF No. 136 ¶ 51; ECF No. 136-1 at pp. 14-15, 273.  Dr. Halligan noted that Plaintiff reported having no bowel movements in the last two to three days. *Id.*  He reported an increase in Motrin/Aspirin consumption in the last forty-eight hours.  *Id.*

Stroup evaluated Plaintiff later that day for continued complaints of abdominal discomfort.  ECF No. 136 ¶ 52; ECF No. 136-1 at pp. 200-202, 271.  On exam, Plaintiff displayed no acute distress and had a normal heart rhythm.  *Id.*  Stroup found no evidence of an abdominal mass or organomegaly positive pulsatile abdominal aorta.  *Id.*  Plaintiff's blood pressure was recorded as 130/68.  *Id.*  Assessment included possible overdose of NSAID/Aspirin, with instructions to remain under 23-hour observation.  *Id.*  Stroup noted that Plaintiff would be educated on the dangers of NSAID/Aspirin overdose prior to discharge.  *Id.*

On June 6, 2017, Plaintiff sent an inmate request form seeking a follow-up for his ongoing medical issues and opining that he might have systemic lupus erythematosus.  ECF No. 57-13.  Plaintiff also indicated that his mother thought he might be having "mini stro[kes]."  *Id.* Edwards responded to Plaintiff's communication by noting that Plaintiff should place a sick call if he wanted a medical appointment.  *Id.*

On June 3, 2017, Plaintiff sent an inmate request form to Dr. Halligan seeking clarification as to whether a consult to see an ENT specialist had been ordered.  ECF No. 134-1 at 42.  Dr. Halligan responded that, based upon her evaluation, no objective clinical indications and/or medical necessity supported an ENT evaluation.  ECF No. 136 ¶ 55; ECF No. 136-1 at p.

437.  In response to a subsequent grievance, Edwards confirmed that an ENT consult would not be scheduled unless or until it was approved by Dr. Halligan.  ECF No. 134-1 at 47.

On June 21, 2017, Plaintiff filed another inmate request form "formally request[ing] an Antinuclear Antibody panel test" to check for lupus.  ECF No. 57-12.  Edwards responded that Plaintiff could not order his own lab tests and needed to be seen and assessed by medical for his ailments if he wanted treatment.  *Id.*

On July 3, 2017, Plaintiff visited medical complaining of abdominal pain.  ECF No. 136 ¶ 57; ECF No. 136-1 at pp. 267-268.  The nurse noted that his bowel sounds were positive in all four quadrants but that he flinched with minimal palpation of the abdomen in all quadrants.  *Id.* Plaintiff reported that he only had a bowel movement every five to seven days and that he had observed some blood in his stool.  *Id.*  He also complained of sinus drainage, migraines, and jaw pain.  *Id.*

On July 10, 2017, Plaintiff was admitted to the infirmary for chronic sinusitis.  ECF No. 136 ¶ 61; ECF No. 136-1 at pp. 293-294, 296, 297, 303-304.  Plaintiff was provided with antibiotics and instructed to remain under observation.  *Id.*  An X-ray of his sinuses performed later that day revealed mucosal disease in the maxillary sinuses, worse on the left, with no-air fluid levels or bony erosions.  *Id.*

Later that day, Dr. Halligan noted Plaintiff's complaints of ongoing issues with nasal sinus congestion and increased retention of foul-smelling oral secretions.  ECF No. 136 ¶ 62; ECF No. 136-1 at pp. 305-308.  She noted that his symptoms began around March 2017 and prevented him from eating.  *Id.*  Dr. Halligan noted that Plaintiff had lost approximately 23 pounds since November 2016 (from 189 lbs. to 166 lbs.) and diagnosed Plaintiff with chronic sinusitis and weight loss.  *Id.*  She noted that his weight loss was not uncommon and that his

nutritional parameters were okay.  *Id.*  She indicated that she planned to recheck his thyroid

levels.  *Id.*  Over the next several days, Dr. Halligan, Secara, and the nursing staff continued to

monitor Plaintiff and adjust his medications.  ECF No. 136 ¶¶ 63-67.

On July 14, 2017, Dr. Halligan noted that Plaintiff was doing okay despite ongoing oral

secretions.  ECF No. 136 ¶ 67; ECF No. 136-1 at pp. 294, 295, 298.  Dr. Halligan noted an

impression of acute or chronic sinusitis.  *Id.*  Plaintiff was discharged from the infirmary with

plans to obtain a repeat sinus X-ray in approximately one week.  *Id.*

On July 18, 2017, Plaintiff had blood work taken.  ECF No. 136 ¶ 68; ECF No. 136-1 at

pp. 28-30.  Plaintiff's results indicated that his thyroid was within normal limits.  *Id.*

Plaintiff underwent an X-ray of his sinuses on July 21, 2017.  ECF No. 136 ¶ 70; ECF

No. 136-1 at p. 52.  The study revealed worsening mucosal disease in the maxillary sinuses with

no air-fluid levels or bony erosions.  *Id.*  A handwritten note from Dr. Halligan on the report

indicates that Plaintiff had been non-compliant with medications and that he was scheduled to

see her on August 1.  *Id.*

On August 1, 2017, Dr. Halligan evaluated Plaintiff for his ongoing medical complaints.

ECF No. 136 ¶ 71; ECF No. 136-1 at pp. 13, 266.  Dr. Halligan reviewed Plaintiff's chart and

noted that he had not been compliant with his treatment plan for his acute/chronic sinus

problems.  *Id.*  Dr. Halligan discussed medication compliance with him and planned to recheck

sinus films and address other issues once he was 100% compliant with medications.  *Id.*  Dr.

Halligan then entered an order for Plaintiff to follow up with her on September 26.  *Id.*

On August 16, 2017, at 7:10 p.m., Chuzie admitted Plaintiff to the infirmary for a 23-

hour observation for his complaints of abdominal pain.  ECF No. 136 ¶ 73; ECF No. 136-1 at pp.

12, 263-265.  Plaintiff's blood pressure was 146/70, his temperature was 100, and his pulse was

109. *Id.* Around 7:30 p.m., Plaintiff was observed putting fingers down his throat and spitting mucus into the toilet. *Id.* He refused Tylenol and all bedtime medications. *Id.*

Dr. Halligan evaluated Plaintiff the next day in the infirmary and noted that he had no nausea/vomiting or changes in bowel movement. ECF No. 136 ¶ 74; ECF No. 136-1 at pp. 11, 263. His abdomen was flat without organomegaly positive normoactive bowel sounds. *Id.* Dr. Halligan assessed him with "chronic multiple nonspecific issues" and planned to review his medications and have him undergo baseline gastrointestinal evaluation. *Id.*

Dr. Halligan saw Plaintiff again on August 18, 2017, at which time she noted that his blood pressure was normal and that he was eating and drinking normally. ECF No. 136 ¶ 75; ECF No. 136-1 at pp. 11, 262. Dr. Halligan planned to discharge him from the infirmary. *Id.*

On September 1, 2017, Plaintiff saw Chuzie as a follow up to his recent abdominal X-ray and to review his medications. ECF No. 136 ¶ 76; ECF No. 136-1 at pp. 10, 261. Plaintiff acknowledged recent bowel movements but indicated that he was only taking his medications – Miralax, Colace, and Lactulose – once daily (rather than twice daily as ordered). *Id.* Plaintiff was diagnosed with constipation and ordered to continue Miralax and Lactulose twice a day and Colace once daily. *Id.* Chuzie planned to further monitor Plaintiff's bowel movements every four days. *Id.*

On September 7, 2017, a nurse completed a dental complaint form reflecting Plaintiff's complaints of pain at each side of his trachea with "lumps" causing difficulty swallowing and a "pop" of his right upper jaw followed by blood drainage down his throat causing nausea. ECF No. 136 ¶ 77; ECF No. 136-1 at pp. 181-185, 261. The nurse noticed visual evidence of tooth decay and referred him to dental. *Id.*

On September 15, 2017, Plaintiff attended a follow up appointment with Stroup for his complaints of abdominal discomfort and constipation. ECF No. 136 ¶ 79; ECF No. 136-1 at pp. 8, 260. Stroup noted that Plaintiff had been 93% compliant with Lactulose and Miralax but was not using the prescription for Colace. *Id.* Following a benign bowel exam, Stroup assessed Plaintiff with irritable bowel syndrome and constipation. *Id.* Stroup planned to discontinue Colace and add a trial of Bisacodyl, two tablets four times daily for ten days. *Id.*

Later that day, another X-ray of Plaintiff's abdomen revealed nonspecific bowel gas pattern with abundant stool in the colon. ECF No. 136 ¶ 80; ECF No. 136-1 at p. 50. The X-ray displayed no small bowel obstruction or free air and revealed less stool than the prior X-ray taken on August 18, 2017. *Id.*

On September 19, 2017, Plaintiff attended an appointment with Dr. Halligan for his ongoing complaints of abdominal discomfort. ECF No. 136 ¶ 81; ECF No. 136-1 at pp. 7-8, 259-260. Plaintiff's abdomen was soft, non-tender and non-distended on examination, with positive bowel sounds. *Id.* Dr. Halligan assessed him with constipation and noted that the September 15 X-ray of his abdomen had revealed abundant stool in the colon. *Id.* Dr. Halligan planned to intensify Plaintiff's bowel regimen in the infirmary under directly observed treatment. *Id.* Dr. Halligan ordered Plaintiff to remain under 23-hour observation in the infirmary until an X-ray of his abdomen revealed improvement of stools. *Id.*

On September 20, 2017, Dr. Halligan noted that Plaintiff continued to have ongoing non-specific symptoms for which no pathology had been found despite medical evaluation. ECF No. 136 ¶ 82; ECF No. 136-1 at pp. 6, 256-258. Dr. Halligan noted that she and another DOC physician had discussed Plaintiff's ailments and agreed that there was no clinical need for a referral to an ENT. *Id.* Dr. Halligan observed that Plaintiff was taking full meals and could fully

open his mouth during any posterior pharynx evaluation. *Id.* Dr. Halligan noted that Plaintiff's ongoing constipation had resulted in an infirmary stay for intensive bowel regimen. *Id.* Dr. Halligan concluded that Plaintiff did not need a dental or ENT referral at that time but would be referred should needs arise in the future. *Id.* Medical staff monitored Plaintiff over the next several days in the infirmary before discharging him on September 29th. ECF No. 136 ¶¶ 83-84, 89.

On September 21, 2017, Plaintiff contacted a registered nurse to show her the contents of his toilet: a large quantity of toilet paper and two soft, light brown fecal pieces about two inches long. ECF No. 136 ¶ 83; ECF No. 136-1 at pp. 254-55. Plaintiff also showed her a clear gel-like product on the crotch of his underwear, insisting that it was mucous. *Id.* The nurse explained to Plaintiff that this substance was the lubricant from his enema. *Id.*

On September 26, 2017, Dr. Halligan noted that a new abdominal X-ray showed a decrease in stool from prior exam. ECF No. 136 ¶ 85; ECF No. 136-1 at p. 252. In response to Plaintiff's complaint of "mucus spilling out of intestines," Dr. Halligan explained that his constipation needed to be relieved before further steps could be taken. *Id.* Dr. Halligan increased his medications and added daily Magnesium Citrate and a daily enema. *Id.*

On September 27th, Dr. Halligan reviewed a list of Plaintiff's symptoms and noted that he was responding to the intensified bowel regimen. ECF No. 136 ¶ 87; ECF No. 136-1 at pp. 4, 240-250. Dr. Halligan could not discern any physiologic basis for Plaintiff's symptoms aside from constipation. *Id.* She planned to monitor his subjective symptoms and seek input from psychiatry. *Id.*

On October 2, 2017, Dr. Halligan noted that Plaintiff continued to suffer from constipation and that, although his last abdominal X-ray had showed a decrease in stool, a

significant amount of stool was still present.  ECF No. 136 ¶ 90; ECF No. 136-1 at p. 247.  Dr. Halligan planned to further intensify his bowel regimen.  *Id.*  She noted that Plaintiff remained stable and that his abdomen was soft and non-tender/non-distended.  *Id.*  He also had normal active bowel sounds.  *Id.*

On October 4, 2017, Dr. Halligan noted that Plaintiff had refused a Fleets enema that day and had missed some of his bowel regimen medications.  ECF No. 136 ¶ 92; ECF No. 136-1 at p. 246.  He was eating all meals without vomiting and had normal active bowel sounds on examination.  *Id.*  She assessed him with constipation without evidence of active obstruction.  *Id.*  Dr. Halligan explained to Plaintiff that he was undergoing an intense bowel regimen to relieve constipation and needed to remain in the infirmary.  *Id.*

On October 11, 2017, Dr. Halligan noted that Plaintiff had again missed some bowel medications over the weekend.  ECF No. 136 ¶ 97; ECF No. 136-1 at pp. 2, 244-245.  Plaintiff was placed on an IV for hydration to help soften his stool and instructed to take Lactulose five times daily and Miralax with Magnesium Citrate.  *Id.*

On October 18, 2017, Dr. Halligan indicated that Plaintiff was tolerating the intensified bowel regimen for refractory constipation and noted no vomiting or abdominal pain that day.  ECF No. 136 ¶ 100; ECF No. 136-1 at pp. 2, 244.

On October 20, 2017, an X-ray of Plaintiff's abdomen revealed increased fecal material without evidence of mechanical obstruction.  ECF No. 136 ¶ 102; ECF No. 136-1 at pp. 45, 243.  A handwritten note on the report stated: "Trying to make sure [patient] taking Lactulose 5x/day." *Id.*

On October 21, 2017, Dr. Halligan noted that Plaintiff was much better.  ECF No. 136 ¶ 103; ECF No. 136-1 at pp. 1, 243.  He was able to drink coffee and was tolerating all meals.  *Id.*

18

Plaintiff's recent abdominal X-ray revealed ongoing stool in his colon but no gas. *Id.* Dr. Halligan indicated that Plaintiff's constipation appeared to be resolved and planned to reduce his medications. *Id.*

Dr. Halligan examined Plaintiff in the infirmary on October 23, 2017. ECF No. 136 ¶ 104; ECF No. 136-1 at pp. 9, 242. Dr. Halligan planned to have him sent for a gastrointestinal evaluation to perform a colonoscopy and an upper GI endoscopy ("EGD"). *Id.*

On December 12, 2017, Plaintiff was transported to an outside appointment at Millcreek Community Hospital Radiology for a colonoscopy. ECF No. 136 ¶ 108; ECF No. 136-1 at pp. 24, 179. The procedure revealed mild hemorrhoids but no bleeding or blockage. *Id.*

On January 4, 2018, Plaintiff reported to Dr. Halligan that he felt like he had a hole in his esophagus when drinking water. ECF No. 136 ¶ 110; ECF No. 136-1 at p. 172. He denied dysphagia (difficulty drinking water), intermittent cough, or ongoing tobacco use but reported right knee pain, constipation, and hemorrhoids. *Id.* Dr. Halligan reviewed the results of Plaintiff's colonoscopy and advised him that she would address his multiple clinical concerns over the course of the year in a systematic manner with regular follow up. *Id.*

On January 5, 2018, at approximately 1:47 p.m., Plaintiff was transported to medical after complaining of neck and chest pain. ECF No. 136 ¶ 111; ECF No. 136-1 at p. 167. According to his medical records, Plaintiff became aggressive and belligerent while in the medical treatment room and denied any chest pain. *Id.* Instead, he complained of right-side neck pain and claimed to have had food stuck in his throat for two weeks. *Id.* His vital signs were within normal limits and he was able to swallow and yell without difficulty. *Id.* Dr. Halligan's notes from that same day indicate that Plaintiff had complained that a bone was tearing down his throat. ECF No. 136 ¶ 113; ECF No. 136-1 at p. 171. Plaintiff requested a transfer to an outside facility. *Id.* Dr.

Halligan noted that Plaintiff had been able to eat, drink, and speak without any problems and that his condition might be an exacerbation of his sinusitis. *Id.* She also noted that sinus films were pending. *Id.*

Later that day, Plaintiff presented to medical again with complaints of coughing up blood. ECF No. 134-1 at 36. Plaintiff indicated that he believed a piece of bone had broken off from his sinuses and lodged in his esophagus. *Id.* The evaluating nurse noted that his respirations were unlabored and that his vitals were all normal and instructed him that Dr. Halligan would be notified. *Id.* Based on this examination, Plaintiff filed a grievance in which he accused Edwards of walking into the examination room and denying him access to a qualified medical provider and threatening to place him in the RHU. *Id.* at 26. Smock later denied the grievance, noting that Edwards "as the Registered Nurse Supervisor has the authority to examine (triage) the patient and determine whether or not seeing a Provider is indicated at that moment" and that Plaintiff's January 5 examination "was negative for any signs or symptoms of having a shard lodged in your throat." *Id.* at 28.

On January 11, 2018, Dr. Halligan evaluated Plaintiff in the infirmary for his sinus issues. ECF No. 136 ¶ 114; ECF No. 136-1 at p. 163. Dr. Halligan noted that Plaintiff's adherence to his prescribed regimen for probable acute exacerbation of chronic sinusitis was not optimal. *Id.* Dr. Halligan advised Plaintiff that he had been admitted to the infirmary so that his adherence and his progression could be monitored. *Id.* Plaintiff remained in the infirmary under observation by medical staff until January 20, 2018. ECF No. 136 ¶¶ 115-124.

On January 21, 2018, Dr. Halligan noted that Plaintiff had been discharged from the infirmary the previous day. ECF No. 136 ¶ 124; ECF No. 136-1 at p. 63. Dr. Halligan indicated that Plaintiff had done well for his treatment for maxillary sinus disease and had no blood-tinged

sputum or drainage. *Id.* He was scheduled to finish his 15-day course of antibiotics but would continue steroid nasal spray, nasal saline spray, and non-sedating antihistamine. *Id.* Plaintiff was discharged from the infirmary based upon his positive response to recurrent maxillary sinus disease. *Id.*

On March 16, 2018, Plaintiff attended a follow-up appointment with Stroup to discuss his complaints of constipation and symptoms of irritable bowel syndrome with constipation. ECF No. 136 ¶ 126; ECF No. 136-1 at p. 428. Stroup noted that Plaintiff had undergone a colonoscopy (negative for colitis, masses, or polyps) and multiple laxative trials. *Id.* Plaintiff's abdominal exam was benign. *Id.* Stroup advised Plaintiff that his current symptoms were consistent with irritable bowel syndrome with constipation and that medical personnel would continue to discuss his treatment to determine a course of action. *Id.*

### III.   **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56). After the moving party has satisfied this burden, the

nonmoving party must provide facts showing that there is a genuine issue for trial in order to avoid summary judgment. *Id.* at 324.  The nonmoving party must go beyond the pleadings and show specific facts by affidavit or by information in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Id.* at 322.  In conducting its analysis, the court must construe the record and any reasonable inferences in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.   Discussion

### A.  Eighth Amendment Claims

Two federal claims remain in this action,[4] each premised on Plaintiff's contention that Halligan, Stroup and Edwards violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted).  To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a

---

[4] Plaintiff devotes a significant portion of his responsive brief to allegations that the DOC Defendants violated the First Amendment by engaging in unlawful retaliation. *See* ECF No. 147 at pp. 9-13. This claim does not appear in either Plaintiff's original or amended pleadings and, as such, is not properly part of this action. Indeed, the operative pleading, Plaintiff's Amended Complaint, states eight separate counts of allegedly unlawful conduct without any reference to either the First Amendment or retaliation. Nor did the parties (or the Court) raise the possibility of a retaliation claim during the earlier stages of this lawsuit; to the contrary, the Court's order dismissing this action – as well as the subsequent order reinstating portions of it – each addressed only Eighth Amendment and medical malpractice claims. *See* ECF No. 95. The parties have not conducted discovery with respect to any allegations of retaliation and neither moving group of Defendants addressed such a claim in their motions for summary judgment. Because it is axiomatic that a "complaint may not be amended by the briefs in opposition to a [dispositive motion]," Plaintiff's arguments with respect to his unpled retaliation claim must be disregarded. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal marks and citation omitted); *Bracken v. Cty. of Allegheny*, 2017 WL 5593451, at *2 (W.D. Pa. Nov. 21, 2017) ("A pleading may not be amended by a brief in opposition").

serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Plaintiff's claims in the instant action focus on Halligan, Stroup, and Edwards' alleged failure to adequately treat his sinus condition and Halligan and Stroup's alleged failure to adequately treat his bowel discomfort and constipation. In broad brush, Plaintiff maintains that Defendants performed perfunctory examinations, offered inadequate remedies for his ailments, refused to order testing that he felt was necessary, falsified his medical records and/or relied on inaccurate information, and subjected him to "barbaric" medical procedures which caused him to fear for his life. ECF No. 57. Plaintiff appears to concede that he was provided with routine access to medical staff at SCI-Albion but accuses Defendants of delaying treatment and offering inadequate or ineffective remedies for his serious medical conditions.

Allegations of deliberate indifference must satisfy "a high threshold." *Anderson v. Bickell,* 2018 WL 5778241, at *2 (3d Cir. Nov. 2, 2018). It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274,

278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

By the same token, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (quoting *Estelle*, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, -- Fed. Appx. --, 2018 WL 4776165, at *3 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'") (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)).

In the instant case, there is no question that Plaintiff received "some level of medical care" from Halligan, Stroup, Edwards, and the medical staff at SCI-Albion. *Hensley*, 2018 WL 4233021, at *3. Plaintiff's medical records indicate that he received medical attention – either a visit with a medical practitioner or some form of diagnostic test – on more than sixty occasions

during the relevant time period.  Plaintiff underwent numerous X-rays, multiple EKGs, a CT

scan, a colonoscopy, a thyroid test, an Ova and Parasite test, and received at least two visits to a

local hospital to diagnose and treat his ailments.  Plaintiff was also provided with a host of

medications including antibiotics, Miralax, Augmentin, Colace, Topamax, Levaquin, Floxacin,

Claritin, Lactulose, Bisacodyl, Magnesium Citrate, saline nasal spray, steroid nasal spray, and

enemas.  "Where the plaintiff has received some care, inadequacy or impropriety of the care that

was given will not support an Eighth Amendment claim."  *Norris v. Frame*, 585 F.2d 1183, 1186

(3d Cir. 1978).  Such is clearly the case here.

To the extent that Plaintiff complains that those medications and procedures were not

effective or were not the interventions that he preferred, it is well-settled that an inmate's

objection to the type of medications and procedures ordered by prison physicians is precisely the

type of "disagreement between an inmate and doctors over alternate treatment plans" that falls

well short of a constitutional violation.  *Tillery*, 2018 WL 3521212, at *5.  Indeed, these types of

claims frequently arise – and are routinely rejected – in the prison setting.  *See, e.g., Whooten v.*

*Bussanich*, 248 Fed. Appx. 324, 326-27 (3d Cir. 2007) (medical staff was not deliberately

indifferent for treating migraine headaches with a medication other than the drug preferred by

plaintiff); *Ascenzi v. Diaz*, 247 Fed. Appx. 390, 391 (3d Cir. 2007) (no deliberate indifference

where plaintiff was provided pain medication and antibiotics instead of narcotic pain relievers

for his herniated cervical discs); *Castro v. Kastora*, 2018 WL 4538454, at *6 (E.D. Pa. Sept. 20,

2018) (use of ibuprofen and Tylenol instead of Oxycodone or other narcotics did not amount to

deliberate indifference; "[t]he medical staff did not withhold pain medication [but] merely

exercised their medical judgment in providing [plaintiff] with a different medication than what

he wanted.").  While Plaintiff is clearly frustrated by the perceived ineffectiveness of many of

the treatments that he was offered, there is nothing to suggest that Defendants withheld more effective treatments.

In short, the undisputed evidence of record plainly belies the viability of Plaintiff's Eighth Amendment claims. Plaintiff received frequent and comprehensive attention for his medical conditions and the treatment decisions that resulted were the product of medical judgment, restricted only by the limitations of medical science, rather than any impermissible factor. Plaintiff's dissatisfaction with those decisions amounts to nothing more than a "disagreement between an inmate and doctors over alternate treatment plans." *Tillery*, 2018 WL 3521212, at \*5. Under such circumstances, summary judgment is warranted.

## B. Medical malpractice/negligence

Plaintiff also asserts state law claims of medical malpractice and negligence against Halligan, Stroup, and Smock. Because no federal claims remain, any potential basis for this Court to consider Plaintiff's state law claims lies solely within the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

The Court of Appeals for the Third Circuit has instructed that a district court "must decline to decide the pendent state claims" after the claims over which the district court has original jurisdiction have been resolved "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Neelu Pal v. Jersey City Med. Ctr.*, 658 Fed. Appx. 68, 75 n. 6 (3d Cir. 2016) (emphasis in original) (internal quotation marks and citations omitted). This principle applies even after the parties have conducted discovery or litigated motions for summary judgment. *See, e.g., Yue Yu v. McGrath*, 597 Fed. Appx. 62, 68 (3d Cir. 2014) (affirming the district court's decision to dismiss

"all of the remaining state and common law claims after awarding summary judgment to [d]efendants on all of the federal claims over which it had original jurisdiction").

As Plaintiff's medical malpractice claims are entirely grounded in state law, the Court will exercise its discretion and decline to exercise supplemental jurisdiction over those claims. *Id.* at 68; *see also* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline to exercise supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction"). Those claims will be dismissed without prejudice to Plaintiff's right to pursue those claims in state court.

### V.   Conclusion

Based upon the foregoing reasons, Defendants' motions for summary judgment will each be granted. An appropriate Order follows.

SUSAN PARADISE BAXTER
United States District Judge

cc:   Charles Keith Horsh
      KK 2691
      SCI Somerset
      1590 Walters Mill Road
      Somerset, PA 15510
      (via U.S. mail, first class)

      All counsel of record
      (via CM/ECF)